**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MARIA VASCONEZ ALARCON, *on behalf of herself,*
*FLSA Collective Plaintiffs, and the Class,*

                      Plaintiff,

            v.

PLEASANT HOSPITALITY GROUP, INC.
         d/b/a CRAFT PIZZA & BEER,
GREELEY PIZZA CORP.
         d/b/a PIZZA STATION,
DARNOV LLC
         d/b/a PIZZA STATION,
TACO STREET BAR & KITCHEN INC.
         d/b/a TACO STREET BAR & KITCHEN,
MIHAILO DARMANOVIC
         a/k/a DAVID DARMANOVIC, and
RADOMAN BOJOVIC,

                      Defendants.

---

Case No:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

        Plaintiff, MARIA VASCONEZ ALARCON ("Plaintiff"), on behalf of herself and others

similarly situated, by and through her undersigned attorneys, hereby files this Class and

Collective Action Complaint against Defendants, PLEASANT HOSPITALITY GROUP, INC.

d/b/a CRAFT PIZZA & BEER, GREELEY PIZZA CORP. d/b/a PIZZA STATION, DARNOV

LLC d/b/a PIZZA STATION, TACO STREET BAR & KITCHEN INC. d/b/a TACO STREET

BAR & KITCHEN, (individually, "Corporate Defendant" and collectively, "Corporate

Defendants"), MIHAILO DARMANOVIC a/k/a DAVID DARMANOVIC and RADOMAN BOJOVIC ("Individual Defendants", and together with Corporate Defendants, "Defendants") and states as follows:

**INTRODUCTION**

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that she and similarly situated individuals are entitled to recover from Defendants: (1) unpaid tips due to an illegal tip retention policy, (2) liquidated damages, and (3) attorneys' fees and costs.

2.      Plaintiff alleges that, pursuant to the New York Labor Law ("NYLL"), she and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, due to an invalid tip credit policy, (2) unpaid tips due to an illegal tip retention policy, (3) unpaid spread of hours premiums, (4) liquidated damages, (5) statutory penalties due to WTPA violations, and (6) attorneys' fees and costs.

3.      Plaintiff individually alleges that, pursuant to the FLSA and the NYLL, Plaintiff was deprived of her statutory rights due to Defendants' retaliation against Plaintiff, and seeks to recover (1) economic damages, (2) compensatory damages, (3) punitive damages, (4) damages for egregious emotional distress, and (5) attorneys' fees and costs.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

6.      Plaintiff, for all relevant time periods, was a resident of Bronx County, New York.

7.      PLEASANT HOSPITALITY GROUP, INC. is a domestic business corporation organized under the laws of the State of New York, with a principal place of business at and address for service of process both located at 152 Bedford Road, Pleasantville, NY 10570.

8.      GREELEY PIZZA CORP. is a domestic business corporation organized under the laws of the State of New York, with a principal place of business located at 88 S Greeley Ave, Chappaqua, NY 10514, and an address for service of process at 390 Bedford Road, Pleasantville, NY 10570.

9.      DARNOV LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of business and address for service of process both located at 27 Parkway, Katonah, NY 10536.

10.     TACO STREET BAR & KITCHEN INC. is a domestic business corporation organized under the laws of the State of New York, with a principal place of business located at 86 S Greeley Ave, Chappaqua, NY 10514 (directly next to the place of business of Corporate Defendant GREELEY PIZZA CORP.), and an address for service of process at c/o Spiegel & Utrera P.A., P.C., 1 Maiden Lane, 5th Floor, New York, NY 10038.

11.     Individual Defendant MIHAILO DARMANOVIC ("Individual Defendant DARMANOVIC") is an owner and principal of all Corporate Defendants. Individual Defendant DARMANOVIC exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. Individual Defendant DARMANOVIC exercises the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and Class Members at each of the restaurant

locations. At all times, employees of any of Defendants' restaurants could complain to Individual Defendant DARMANOVIC directly regarding any of the terms of their employment, and Individual Defendant DARMANOVIC would have the authority to effect any changes to the quality and terms of employees' employments, including changing their schedules, compensation, or terminating or hiring such employees. Individual Defendant DARMANOVIC exercises functional control over the business and financial operations of each of the Corporate Defendants. Individual Defendant DARMANOVIC is listed as a principal of Corporate Defendant PLEASANT HOSPITALITY GROUP INC under the New York State Liquor Authority Mapping Project. *See* **Exhibit A.**

12.     Individual Defendant RADOMAN BOJOVIC ("Individual Defendant BOJOVIC") is the principal of Corporate Defendant PLEASANT HOSPITALITY GROUP INC. Individual Defendant BOJOVIC exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. Individual Defendant BOJOVIC exercises the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and Class Members at each of the restaurant locations. At all times, employees of Corporate Defendant PLEASANT HOSPITALITY GROUP INC could complain to Individual Defendant BOJOVIC directly regarding any of the terms of their employment, and Individual Defendant BOJOVIC would have the authority to effect any changes to the quality and terms of employees' employments, including changing their schedules, compensation, or terminating or hiring such employees. Individual Defendant BOJOVIC exercises functional control over the business and financial operations of Corporate Defendant PLEASANT HOSPITALITY GROUP INC.

13.     Defendants collectively own and operate a four (4) restaurant enterprise in New York, comprised of three (3) pizzerias and one (1) taqueria, which operates at the following locations:

(i)     152 Bedford Road, Pleasantville, NY 10570 ("Craft Beer & Pizza");]

(ii)    88 S Greeley Ave, Chappaqua, NY 10514 ("Pizza Station Chappaqua");

(iii)   27 Parkway, Katonah, NY 10536 ("Pizza Station Katonah"); and

(iv)    86 S Greeley Ave, Chappaqua, NY 10514 ("Taco Street")

        (together, the "Restaurants").

14.     The Restaurants are operated by Defendants as a single integrated enterprise. Specifically, the Restaurants are engaged in related activities, share common ownership and management, and have a common business purpose. The Restaurants are commonly owned through the common foremost control of Individual Defendant DARMANOVIC who holds an executive position in all the entities and has the power to make binding decisions for the entities.

(i)     Three of the Restaurants are pizzerias which serve similar menu items comprised of traditional Italian-American cuisine such as pizzas, pastas, sandwiches, and salads. *See* **Exhibit B;** *see also* (https://www.craftpizza-ny.com/menu/food); (https://www.orderpizzastation.com/#menu); (https://www.pizzastationchappaqua.com/#menu). Additionally, two of these pizzerias operate through the same brand, Pizza Station.

(ii)    In a prior lawsuit against Defendants, Defendants admitted in their answer to the plaintiffs' complaint that Individual Defendant DARMANOVIC owns Corporate Defendants GREELEY PIZZA CORP. and TACO STREET BAR AND KITCHEN INC. *See* **Exhibit C, ¶¶** 21, 32; *see also Mendoza et al v. Taco Street*

*Bar and Kitchen Inc. et al* (7:21-cv-03171, S.D.N.Y.) (Initial Complaint, Docket No. 1 ¶¶ 21, 32, and Defendants' Answer, Docket No. 13, ¶¶ 21, 32.)

(iii)    Taco Street and Pizza Station Chappaqua are located directly next to each other. Defendants share employees, ingredients, and supplies between these two locations.

(iv)    A location search on New York State Liquor Authority Mapping Project (LAMP) shows that Individual Defendant DARMANOVIC is a principal of Taco Street, and Individual Defendants DARMANOVIC and BOJOVIC are principals of Craft Pizza and Beer. Individual Defendant DARMANOVIC is listed as a "Permitted Operator" in the New York State Food Service Establishment Inspections in Pizza Station Chappaqua. *See* **Exhibit D.**

(v)    Although Individual Defendant DARMANOVIC is neither listed as the principal nor the permitted operator of Pizza Station Katonah, he holds himself out to be President of KARNOV LLC, the Corporate Defendant which owns and operates Pizza Station Katonah. *See* **Exhibit E.**

15.    Although Plaintiff only worked at Craft Pizza & Beer, all Defendants are still appropriately named in the Complaint through the theory of a "single integrated enterprise". Defendants' Restaurants share: (i) common ownership by Individual Defendant DARMANOVIC, as admitted by Defendants, (ii) interrelation of operations as shown through the exchange of employees and supplies between Restaurants, (iii) centralized control of labor relations as shown through their exchange of employees between the different Restaurants; and (iv) common management by Individual Defendant DARMANOVIC.

16.    Defendants' Restaurants share an adequate amount of commonalities and purposes that clearly classifies them as a "single integrated enterprise".

17.    At all relevant times, each of the Corporate Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL.

18.    At all relevant times, the work performed by Plaintiff and Class Members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

19.    Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt front-of-house tipped employees (including servers, bussers, bartenders, food runners, and delivery persons, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

20.    At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, due to Defendants' policies of unlawfully retaining gratuities earned by Plaintiff and FLSA Collective Plaintiffs. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

21.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

22.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt front-of-house tipped employees (including servers, bussers, bartenders, food runners, and delivery persons, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or Class Members).

23.     The Class Members are readily ascertainable. The number and identity of Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23. Plaintiff is a member of the Class.

24.     The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

25.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subjected to the same corporate practices by Defendants, as alleged herein, of Defendants' (1) failure to pay minimum wages due to invalid tip credit deductions, (2) unlawful tip retention, (3) failure to compensate spread of hours premiums for workdays with a spread of ten or more hours, (4) failure to provide proper wage and hour notices, at dates of hiring and annually thereafter, per requirements of the New

York Labor Law, and (5) failure to provide proper wage and hour statements, per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures of Defendants.

26.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

27.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or

varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

28.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

29.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)  Whether Defendants employed Plaintiff and the Class within the meaning of the New York Labor Law;

b)  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c)  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

d)  Whether Defendants properly notified Plaintiff and the Class Members of their hourly rates;

e) Whether Defendants properly provided notice to Plaintiff and Class Members that Defendants were deducting tip credits from their wages;

f) Whether Defendants provided proper wage statements informing Plaintiff and Class Members of the amount of tip credits deducted from their wages for each payment period, their proper rates of compensation, and other information Defendants were required to provide to them on their wage statements, as provided under the New York Labor Law;

g) Whether Defendants deducted the proper amounts of tip credit allowance from Plaintiff's and Class Members' wages under the New York Labor Law;

h) Whether Defendants required Plaintiff and Class Members to perform non-tipped work for more than 20% of their work day;

i) Whether Defendants required Plaintiff and Class Members to perform non-tipped work for continuous periods of time exceeding 30 minutes;

j) Whether Defendants instituted an improper tip pool whereby managers and/or non-tipped employees participated;

k) Whether Defendants paid spread of hours premiums to Plaintiff and Class Members for their workdays with a spread of ten or more hours;

l) Whether Defendants provided Plaintiff and Class members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law;

m) Whether Defendants provided Plaintiff and Class members with proper wage statements with each payment of wages, as required by New York Labor Law; and

n)   Whether Defendants paid Plaintiff and Class members New York State minimum wage for all hours worked.

## STATEMENT OF FACTS

Plaintiff *VASCONEZ*'s Employment Background

30.   In or around January 21, 2021, Plaintiff was hired by Defendants to work as a Server at Defendants' Craft Pizza & Beer, located at 152 Bedford Road, Pleasantville, NY 10570. Plaintiff's employment with Defendants ended on April 27, 2024.

31.   From the beginning of her employment until around January 2022, Plaintiff was scheduled by Defendants to work four (4) days per week, Mondays through Wednesdays from 11:00 am to 5:00 pm (6 hours) and Fridays from 4:45 pm to 12:00 am (7.25 hours), for a total of twenty-five (25) hours and fifteen (15) minutes (25.25 hours) per week.

32.   From around January 2022 until the end of her employment, Plaintiff was scheduled by Defendants to work three (3) days per week, Thursdays from 11:00 am to 11:00 pm (12 hours) and Fridays and Saturdays from 11:00 am to 12:00 am (13 hours), for a total of thirty-eight (38) hours per week.

33.   Throughout her employment, Plaintiff always worked without a lunch break.

34.   Throughout her employment, Plaintiff was paid by Defendants at the New York State minimum tipped credit hourly rates ($10.00 per hour for 2021-2023; $10.65 per hour for 2024). At all relevant times, Defendants paid Class Members at similar hourly rates.

Invalid Tip Credit Deductions Claim*s*

35.   Throughout their employments, Plaintiff and Class Members were subjected to Defendants' invalid tip credit deductions, in violation of the and the NYLL.

36.   With respect to Plaintiff and Class Members, Defendants were not actually entitled to deduct any tip credit allowances under the NYLL because Defendants: (i) failed to

properly provide tip credit notice at hiring and annually thereafter; (ii) deducted tip credits from Plaintiff's and Class Members' wages for all hours worked despite having caused them to engage in non-tipped duties for (a) continuous periods of time exceeding thirty (30) minutes, and (b) more than 20% of the work they performed each week, and (iii) unlawfully retained tips from Plaintiff and Class Members.

37.    As a direct result of Defendants' invalid tip credit policy, Plaintiff and Class Members were paid below the New York State minimum wage in violation of the NYLL. *See* 12 N.Y.C.R.R. § 146-1.2, *et seq.*

38.    Throughout Plaintiff's employment, Defendants required Plaintiff to engage in non-tipped duties, including (i) cleaning, sweeping and mopping the restaurant, (ii) disposing and changing trash, (iii) preparing beverages, (iv) preparing cookies, (v) packing and preparing delivery orders, and (vi) answering phone calls, among others. Defendants also required Class Members to engage in similar non-tipped side work.

39.    When Plaintiff worked her shift which lasted around 6 and 7.25 hours, she would spend approximately 2-3 hours during each of these shifts engaging in non-tipped side work, including periods of at least 30 minutes of continuous time. When Plaintiff worked her shifts that lasted for 12 to 13 hours, she would spend approximately 3-5 hours during each of these shifts doing non-tipped side work, including periods of at least 30 minutes of continuous time. Therefore, at all times, Plaintiff's non-tipped side work always took up at least 23% (3/16), and up to 50% (3/6), of Plaintiff's hours worked. Defendants also required Class Members to engage in non-tipped side work for similar amounts of time.

40.    Further, Plaintiff and Class Members never received any notices from Defendants that Defendants were claiming a tip credit on their weekly compensation. Plaintiff and Class Members were never informed by Defendants that Defendants were deducting tip credits from

their wages, nor did they ever receive proper notices by Defendants as to the amount of tip credit allowances Defendants deducted for each payment period during their employments.

41.     At all relevant times, Defendants knowingly and willfully operated their business with a policy of deducting invalid tip credits from Plaintiff's and Class Members' wages, in violation of the NYLL.

Tip Retention Claims

42.     Throughout their employments, Plaintiff, FLSA Collective Plaintiffs, and Class Members were subjected to Defendants' unlawful tip retention policy, in violation of the FLSA and the NYLL.

43.     Around January 2024, Defendants hired a new manager, named "Luigi Del Vecchio", for their Craft Beer & Pizza Location. Defendants allowed this manager to retain tips from the tip pool, thereby retaining tips which were earned by Plaintiff, FLSA Collective Plaintiffs, and Class Members. Approximately half (50%) of the tips from the tip pool were retained by Defendants' management. As a result, Plaintiff, FLSA Collective Plaintiffs, and Class Members had their income from tips reduced by half.

44.     Defendants' managers were salaried employees and not tipped employees, and they never provided sufficient amounts of tipped services to customers to justify receiving (retaining) 50% of the entire tip pool.

45.     Defendants were aware that these tips were being retained because Plaintiff complained to Defendants regarding this tip retention policy, and particularly, to Individual Defendant BOJOVIC. Defendants took no action towards this complaint, and instead continued to retain employees' tips. Plaintiff, left with no other recourse, escalated the tip retention issues to the New York Department of Labor ("NYDOL"), as detailed below in her individual retaliation claims.

46.    Plaintiff's, FLSA Collective Plaintiffs' and Class Members' tips and gratuities are covered under the meaning of § 196-d of the NYLL. In New York, "[n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities and other surcharges or fees, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." § NYLL 196-d.

47.    Further, Defendants failed to provide customers with an explicit written statement that any portions of tips, surcharges, service fees, and gratuities would be retained by Defendants or their management. Defendants' failure to provide notice of their retention of tips from tipped employees was inadequate to satisfy the requirements of *Sarmiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008).

48.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of unlawfully retaining tips from Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and the NYLL.

*Unpaid Spread of Hours Premiums Claims*

49.    Throughout their employments, Plaintiff and Class Members were subjected to Defendants' policy of failing to pay spread of hours premiums for workdays with a spread of ten or more hours, in violation of the NYLL.

50.    As described above, Plaintiff worked 12 and 13 hour shifts for 3 days per week, during most of her employment. However, Defendants never compensated Plaintiff any spread of hours premiums to Plaintiff for any of these days worked.

51.    Similarly, Defendants failed to compensate spread of hours premiums to Class Members for each day they worked with a spread of 10 or more hours.

52.     Defendants knew these spread of hours premiums were owed because Defendants were in control of Plaintiff's and Class Members' schedules, which often required them to work in excess of 10 hours a day. Despite requiring such work, Defendants always failed to compensate any spread of hours premiums to Plaintiff and Class Members.

53.     At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to pay spread of hours premiums to Plaintiff and Class Members, in violation of the NYLL.

WTPA Violation Claims

54.     At all relevant times, Plaintiff and Class Members never received a wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

55.     In *Mendoza,* Defendants admitted to failing to provide proper wage notices to 4 plaintiffs, whose employments overlapped with Plaintiff VASCONEZ's, at their dates of hiring and all changes of payrates thereafter. *See* **Exhibit C,** ¶¶ 70, 100. Defendants have a known history of failing to provide proper wage notices to employees during the relevant times.

56.     In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class Members at the beginning of their employment with Defendants.

57.     Defendants further violated the WTPA by failing to provide Plaintiff and Class members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA. *See Shi Yong Li v. 6688 Corp.,* 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time actually worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460,

468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour actually 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours actually worked") (emphasis added).

58.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs*., 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

59.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing proper rates of pay, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide

wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

60.    Had the wage statements Defendants provided to Plaintiff and Class Members accurately listed the proper rates of pay of Plaintiff and Class Members, as required by law, Defendants would have had to either (a) increase the wages to correspond to the proper rates of pay that Plaintiff and Class Members were legally entitled to; or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the proper rates of pay that Plaintiff and Class Members were legally entitled to. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

61.    The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

62.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

63.    The direct effect of understating the proper hourly rate of employees is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); T.F. v. N.F., 820

N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

64.     The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

65.     "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, *18 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v.*

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains:  "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

*Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting

*Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, *4 (S.D.N.Y. July 14,

2022)).

66.     Here, it is clear that Defendants' failure to provide Plaintiff and Class Members

with accurate wage statements entailed "concrete, downstream consequences" involving

monetary injury. Had the number of hours been accurately reported for a given pay period,

Defendants' automatic payroll system would have correspondingly increased the wages due for

that period, which in turn would have been reflected in the W-2s that Defendants submitted to

the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's

and Class Members' entitlement to social security benefits. Because the inaccuracy prevented

this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

67.     Courts agree that the misreporting of wages constitutes a concrete injury

cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The
> plaintiffs in *Calderon* were former employees alleging the employer failed to pay
> their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the
> plaintiffs lacked standing to compel the employer to pay their FICA taxes because
> "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*.
> at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because
> it is the reporting of income that triggers benefits, and losing benefits is an injury
> under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the
> plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*.
> "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper
> reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

68.     The case at bar is somewhat different from *Coward* inasmuch as Defendants

actually underpaid Plaintiff and other employees rather than merely misreporting their income.

But this distinction has no bearing on the question of Article III standing, since it is still the case

that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*.

Plaintiff and Class members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

69.    Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id.* ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

70.    The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income. *Id.*

71.    Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class Members. The problem, rather, is that Plaintiff and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured

with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

72.    Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

*Plaintiff VASCONEZ's Individual Retaliation Claim*

73.    Throughout her employment, Defendants retaliated against Plaintiff VASCONEZ, in violation of the FLSA and the NYLL.

74.    As described above, Defendants unlawfully retained tips from Plaintiff's wages, and Plaintiff made a complaint to Defendants, in particular, Individual Defendant RADOMAN BOJOVIC, regarding this tip retention that was ignored by Defendants.

75.    Due to Defendants ignoring Plaintiff's complaints of unlawful tip retention, Plaintiff reported Defendants' labor violations to the New York State Department of Labor ("NYSDOL"). As a result of Plaintiff's report, the NYSDOL sent investigators to Defendants' Craft Beer & Pizza to perform an investigation into Defendants' operations, specifically their handling of tips.

76.    Defendants strongly suspected that Plaintiff was the individual who reported them to the NYSDOL. After the NYSDOL's investigation, Defendants engaged in retaliatory conduct towards Plaintiff. Defendants lowered Plaintiff's schedule from 3 days per week to 2 days per week. Defendants eventually lowered Plaintiff's schedule again to only 1 day per week.

77.    After the NYSDOL's investigation, Defendants' management followed Plaintiff around and micromanaged her throughout her shifts. For instance, when Plaintiff would go to the bathroom, Defendants' management would follow her to the bathroom, stand right outside the

bathroom and repeatedly knock on the door to rush Plaintiff out. This conduct did not happen to any other employee and only began after the investigation.

78.    Following NYSDOL's investigation, Defendants began assigning Plaintiff heavier workloads than the other servers. Defendants' management arranged for Plaintiff to seat multiple tables at once and assigned more tables to Plaintiff than other servers, with the intention to overwork Plaintiff. Occasionally, Plaintiff would have 10 or more tables to actively serve, while the other Servers would have only 2 tables. Defendants did not permit the other Servers to assist Plaintiff when she was overworked, despite the fact that all the Servers were participating in a tip pool.

79.    One Server attending multiple tables at once can be stressful, because each table sat is expecting service from the same individual at the same times. Being prompt and attentive is necessary in providing good service, receiving good tips, and keeping customers happy, however, having multiple tables sat within a few minutes of each other can throw off a Server's flow of service and timing. Knowing this, Defendants intentionally and continuously seated multiples of Plaintiff's tables at the same time, in order to induce unnecessary stress, anxiety, and emotional distress onto Plaintiff. The hectic table arrangement which Defendants controlled, cut into Plaintiff's ability to maintain customer satisfaction and ability to earn additional tips.

80.    Because Defendants utilized a tip pool, Plaintiff was not monetarily rewarded for this increased workload, and was actually severely punished, because the tips were distributed by headcount rather than the number of tables served. This meant that the servers who only had 2 tables at a time (having around 20% of Plaintiff's workload) received an equal amount of tips as Plaintiff. Thus, some of the tips that Plaintiff earned had to be distributed to the other Servers. As a result of this tip pooling policy and Defendants' tip retention, Plaintiff was retaliatorily forced

to work harder while a majority of the tips that originated from her individual labor was distributed to her coworkers and her managers.

81.    At the end of her employment, Plaintiff requested vacation time. Defendants approved Plaintiff's request and Plaintiff went on the approved vacation.

82.    When Plaintiff returned from her approved vacation, she asked Defendants' management to return to work over through text messages. However, Defendants' management told Plaintiff that her services were no longer needed and terminated her.

83.    Defendants' sudden termination of Plaintiff was clearly for retaliatory reasons arising from Plaintiff's complaint to Defendants and report to the NYSDOL. Any other reasons for Plaintiff's termination provided by Defendants are clearly pretextual.

84.    When Defendants retaliatorily reduced Plaintiff's weekly schedule from 3 days to 2 days, Defendants reduced Plaintiff's weekly earnings by one-third. When Defendants retaliatorily reduced Plaintiff's weekly schedule again from 2 days to 1 day, Plaintiff's weekly earnings were reduced by two-thirds of her pre-retaliation earnings.

85.    As a direct and proximate result of Defendants' retaliation against Plaintiff, Plaintiff suffered from loss of past and future earnings.

86.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of retaliating against Plaintiff for asserting her rights under the FLSA and the NYLL.

87.    As a result of Defendants' retaliatory conduct, Plaintiff suffered from egregious emotional distress.

88.    Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

89.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

90.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

91.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

92.     At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

93.     At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their proper tips, due to unlawful tip retention.

94.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

95.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, when Defendants knew or should have known such was due.

96.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

97.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

98.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid wages and liquidated damages.

99.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

100.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

101.    At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the NYLL, §§2 and 651.

102.    Defendants failed to properly notify employees of their hourly pay rate, in direct violation of the NYLL.

103.    Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them the lawful minimum wage for all hours worked. As factually described above, Defendants were not entitled to claim any tip credits from Plaintiff's and Class Members' wages under the NYLL.

104.    Defendants willfully violated Plaintiff's and Class Members' rights by subjecting them to an improper policy and practice in which they were required to engage in non-tipped

work for: (i) continuous periods of time exceeding 30 minutes; or (ii) more than 2 hours or 20% of each of their workweeks.

105.    Defendants willfully violated Plaintiff's and Class Members' rights by failing to compensate their lawfully owed spread of hours premiums for each workday with a spread of ten or more hours.

106.    Defendants failed to provide Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the NYLL.

107.    Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment as required by the NYLL § 195(3).

108.    Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid minimum wages, unpaid tips, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of this action, pursuant to New York Labor Law.

## COUNT III

## RETALIATION UNDER THE FAIR LABOR STANDARDS ACT

### (On Behalf of Plaintiff VASCONEZ Only)

109.    Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

110.    At all relevant times, Plaintiff was an employee of Defendants within the meaning of the FLSA, and was a person covered by and intended to benefit from the provisions of the FLSA.

111.    Section 15(a)(3) of the FLSA provides that it is a violation to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint [...] under or related to this Act."

112.    As alleged herein, Plaintiff complained to Defendants and the NYSDOL regarding Defendants unlawful tip retention. In response to such complaints, Defendants engaged in retaliatory conduct against Plaintiff and ultimately terminated Plaintiff's employment, in violation of Section 15(a)(3).

113.    Defendants' retaliatory termination was in willful disregard of the provisions of the FLSA.

114.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff suffered damages in the form of lost earnings and egregious emotional distress. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, damages for egregious emotional distress, back pay, front pay, and attorneys' fees and costs.

## COUNT IV

## RETALIATION UNDER THE NEW YORK LABOR LAW

### (On Behalf Of Plaintiff VASCONEZ Only)

115.    Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

116.    At all relevant times, Plaintiff was an employee of Defendants within the meaning of the NYLL, and was a person covered by and intended to benefit from the provisions of the NYLL.

117.    Defendants willfully violated Plaintiff's rights under the NYLL by retaliating against Plaintiff by terminating her employment after asserting her rights under the NYLL.

118.    Defendants' actions constitute a violation of Section 215 of the NYLL. In relevant part, NYLL § 215(1)(a) states:

> No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer,

28

or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, <u>reasonably and in good faith, believes violates any provision of this chapter,</u> or any order issued by the commissioner. . . . (emphasis added).

119.    As alleged herein, Plaintiff complained to Defendants and the NYSDOL regarding Defendants' unlawful tip retention. In response to such complaints, Defendants engaged in retaliatory conduct against Plaintiff and ultimately terminated Plaintiff's employment, in violation of Section 215(a).

120.    This retaliatory conduct by Defendants was in willful disregard of the provisions of the NYLL.

121.    As a direct and proximate result of Defendants' willful disregard of the NYLL, Plaintiff suffered damages in the form of lost earnings and egregious emotional distress. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, damages for egregious emotional distress, back pay, front pay, and attorneys' fees and costs.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff, on behalf of herself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award of disgorgement of all unlawfully retained tips, due under the FLSA and the NYLL;

d.    An award of unpaid wages, due to an invalid tip credit policy, due under the NYLL;

e.    An award of unpaid spread of hours premiums, due under the NYLL;

f.    An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

g.    An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

h.    An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

i.    An award of back pay, front pay, compensatory damages, punitive damages, and damages for egregious emotional distress, due under the FLSA and the NYLL;

j.    An award of pre-judgment and post-judgment interests, costs, and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

k.    Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

l.    Designation of this action as a class action pursuant to F.R.C.P. 23;

m.    Designation of Plaintiff as Representative of Class; and

n.    Such other and further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: October 17, 2024
      New York, New York

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

By:    /s/ *C.K. Lee*_____
        C.K. Lee, Esq.